## SIMMONS *v.* THORNTON, administrator.

That a particular and specified indebtedness to an administrator has been paid can not be shown merely by introducing in evidence checks drawn by the debtor upon a bank, with its stamp of payment thereon, which

were payable to the order of the person filling the office of administrator in his own name and right, and indorsed by him both individually and in his representative capacity. Such checks, without some evidence connecting them with the indebtedness in question, would, at most, afford proof only of the fact that the debtor had made payments to the payee named in the checks, and would not show to what account they were applied or intended to be applied.

Submitted June 9, — Decided July 11, 1900.

Complaint. Before Judge Calhoun. City court of Atlanta. September term, 1899.

*Arnold & Arnold* and *Simmons & Corrigan,* for plaintiff in error. *S. N. Evins* and *E. R. Black,* contra.

LUMPKIN, P. J. The plaintiff in error, C. J. Simmons, became indebted to P. J. McNamara, as administrator of the estate of M. Lynch, deceased, for money which Simmons had collected as an attorney and which McNamara permitted him to retain as a loan. McNamara died, and E. H. Thornton became administrator de bonis non of Lynch's estate. As such he brought an action against Simmons for the money above mentioned, and "upon the trial of said case the defendant admitted the plaintiff's account in evidence without proof, assuming the burden of showing that the debt had been paid off." For the purpose of so doing, Simmons tendered in evidence several checks drawn by himself on the Exchange Bank of Atlanta, "payable to the order of P. J. McNamara." Each of these checks was indorsed: "P. J. McNamara, M. Lynch Estate by P. J. McNamara, administrator," and on each was a stamp showing that it had been paid by the bank. The plaintiff objected to the admission of these checks, on the ground that they did not show that they were to be applied as payments on the alleged debt of the plaintiff; the court sustained the objection, excluded the checks from evidence, and directed a verdict in favor of the plaintiff, no proof being offered by the defendant "connecting these checks with the plaintiff's debt." The only error of which the bill of exceptions complains is the action of the court in not permitting the checks to be introduced in evidence.

The position of the plaintiff in error is that these checks, without more, afforded prima facie evidence of payments by

him to McNamara upon the debt for the collection of which the present action was brought. There was, as above indicated, no evidence tending to show any connection between the checks and this debt, and it is manifest from the recitals in the bill of exceptions that Simmons had none to offer. He could not himself testify as a witness, because of the fact that McNamara was dead. The naked question therefore is: were these checks, in and of themselves, and without further proof, admissible in evidence to show partial payments by Simmons on his particular debt to the estate of M. Lynch, which Thornton as its representative is now seeking to collect? We think not. In the first place, the checks were payable to the order of McNamara individually, which would seem to indicate that they were given in discharge of some obligation on the part of Simmons to McNamara in his own right. Without more, the natural inference would therefore be that the money which the latter received on these checks belonged to him and not to the estate which he represented. The indorsement, "M. Lynch Estate by P. J. McNamara, administrator," which appeared on each of the checks, might well and plausibly be accounted for on the theory that McNamara, being himself indebted to the estate of Lynch, intended in this manner to transfer to it, in settlement of its demand against him, the funds belonging to him for which the checks called; but even if the fact that he entered this indorsement upon them can be treated as an admission by him that he really received the checks in his representative capacity, such an indorsement certainly does not amount to an admission that the proceeds of the checks were to be applied to the satisfaction of the particular debt to compel payment of which the action was instituted. For aught that appears, Simmons may have been indebted to Lynch's estate upon divers other and entirely distinct demands, in satisfaction of one or more of which these checks may have been given. It is insisted, however, that as the plaintiff did not contend that Simmons ever owed McNamara or the estate of Lynch any debt other than that sued upon, the checks were admissible to show payment of that identical debt. The reply is, that no obligation rested upon the plaintiff of presenting any such contention or attempting to sustain it by proof, but it was

incumbent on the defendant, he having assumed the burden of proof, to show affirmatively by competent and satisfactory evidence that he had as matter of fact paid the very demand which was the foundation of the plaintiff's action.    This, for the reasons above stated, Simmons could not accomplish by merely introducing evidence the only effect of which was to show that he had paid to the representative of Lynch's estate so much money.    To this extent and no further the proof afforded by the checks went, and as there was no evidence connecting them in any way with the debt declared upon, and none offered for this purpose, excluding them was clearly not erroneous.    Apparently, this is a very hard case on Simmons; but, as is obvious, the hardship arises simply by reason of the fact that, under the law, he was, on account of the death of McNamara, disqualified from testifying as a witness in his own behalf.

<em>Judgment affirmed.    All the Justices concurring.</em>